UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| MICHAEL CAMERON SIZEMORE, JAMES ELLIS BURDITT, JR., MARC EUGENE HOEFERT, JAMES SAMUEL MITCHELL, RANDY CARL ROGERS, AND AARON MATTHEW SOVERN, on behalf of themselves and all persons similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>GRAYHAWK HOMES, INC. AND DAVID B. ERICKSON,<br><br>*Defendants.* | CIVIL ACTION FILE NO. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Michael Cameron Sizemore, James Ellis Burditt, Jr., Marc Eugene Hoefert, James Samuel Mitchell, Randy Carl Rogers, and Aaron Matthew Sovern, on behalf of themselves and all persons similarly situated, file this Complaint against their former employer, Grayhawk Homes, Inc. ("Grayhawk") and David B. Erickson, for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, showing the Court the following:

**Introductory Statement**

1. Defendants Grayhawk and Erickson are residential homebuilders. Defendant Erickson is Defendant Grayhawk's founder, President, and Chief Executive Officer. Defendants formerly employed Plaintiffs as construction superintendents or assistant superintendents, and this case arises out of Defendants' failure to properly classify and

compensate Plaintiffs and all persons similarly situated to them under the FLSA. During Plaintiffs' employment, they and other workers similarly situated to them regularly worked overtime hours, but Defendants did not pay them overtime compensation as required by the FLSA.

2.   Plaintiffs bring this lawsuit as a collective action under the FLSA on their own behalf and on behalf of all persons who (a) at any time during the past three years were employed by Defendants as a construction superintendent, assistant superintendent, or in a position with materially similar job duties and responsibilities; (b) worked in that capacity at Defendants' instance, request, or allowance for more than 40 hours per week; and (c) were not paid time-and-a-half for those overtime hours as required by the FLSA.

## Jurisdiction

3.   This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4.   Defendant Grayhawk may be served with a summons and this Complaint pursuant to Federal Rule of Civil Procedure 4(h) by service upon its registered agent, Robert R. Lomax, 820 Brookstone Centre Parkway, Suite 202, Columbus, Georgia 31904. After service, Defendant Grayhawk will be subject to the *in personam* jurisdiction of this Court.

5.   Defendant Erickson may be served with a summons and this Complaint pursuant to Federal Rule of Civil Procedure 4(e) by delivering a copy of a summons and this Complaint to him personally. After service, Defendant Erickson will be subject to the *in personam* jurisdiction of this Court.

## Venue

6. Venue is proper in the Middle District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants are deemed to reside in the Middle District of Georgia, and the events giving rise to this action principally occurred within the Middle District.

7. Venue is proper in the Columbus Division of the Middle District of Georgia under Local Rule 3.4 because Plaintiffs' claims arose in this division and Defendants reside in this division.

## Parties

8. At all relevant times, Defendant Grayhawk has been a Georgia corporation that has maintained offices and conducted substantial business in Georgia. It has been registered with the Georgia Secretary of State to do business in Georgia since 2006.

9. Upon information and belief, Defendant Grayhawk conducts substantial business outside the State of Georgia directly or through affiliate entities that are under the same ownership and control as Defendant Grayhawk.

10. Defendant Erickson is the founder of Defendant Grayhawk, and at all relevant times, he has been its President and Chief Executive Officer.

11. Defendant Erickson is an owner and corporate officer that is involved in Defendant Grayhawk's day-to-day operations and has substantial operational control over Defendant Grayhawk, including, without limitation, the policies governing Plaintiffs and all persons similarly situated to them.

12. Defendant Erickson exerts substantial control over Defendant Grayhawk's compliance with the Fair Labor Standards Act.

13. Defendant Erickson has the ultimate hiring and firing authority for Defendant Grayhawk and has the authority to set wages for its employees, including, without limitation, Plaintiffs and all persons similarly situated to them.

14. Defendant Erickson controls employee work schedules and conditions of employment for Defendants' employees, including, without limitation, Plaintiffs and all persons similarly situated to them.

15. Defendant Erickson determines the rate and method of payment for Defendants' employees, including, without limitation, Plaintiffs and all persons similarly situated to them.

16. During the relevant time period, Defendant Erickson oversaw and had responsibility for maintaining employment records, including, without limitation, employment records for Plaintiffs and all persons similarly situated to them.

17. Defendant Erickson often communicated directly with Plaintiffs and all persons similarly situated to them regarding their job duties or performance, attended weekly meetings with Plaintiffs and all persons similarly situated to them, and supervised Plaintiffs and all persons similarly situated to them during visits to construction and development sites.

18. Defendants are both Plaintiffs' employer as defined by § 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. Defendants are enterprises engaged in interstate commerce under §3(s) of the FLSA, 29 U.S.C. § 203(s)(1), because they are enterprises whose annual gross volume of sales made or business done is not less than $500,000, and they have employees engaged in commerce or have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."

20. Defendants are residential homebuilders who conduct substantial business both inside and outside the State of Georgia, and their officers and employees routinely travel across state lines to transact business. Defendants' employees handle and work with tools and construction materials that have traveled across state lines.

21. Defendants are governed by and subject to § 7 of the FLSA, 29 U.S.C. § 207.

22. Plaintiffs worked as construction superintendents for Defendants.

23. Defendants employed Sizemore as a construction superintendent from approximately January 2013 until approximately March 8, 2016. During Sizemore's employment as superintendent, Defendants initially paid him a salary of $1,000.00 per week, and they later increased his salary to approximately $1,057.69 per week starting in or around March 2015.

24. Defendants employed Burditt as a construction superintendent or assistant superintendent from June 22, 2015 until approximately February 2017, excluding an approximately six-month period of time in which he worked for Defendant Grayhawk in a different position. During Burditt's employment as superintendent, Defendants initially paid him a salary of approximately $928.08 per week, and they later increased his salary to approximately $1,115.38 per week.

25. Defendants employed Hoefert as a construction superintendent from approximately October 1, 2014 until May 24, 2017, excluding an approximately two-month period of time in which he worked for Defendant Grayhawk in a different position. During Hoefert's employment as superintendent, Defendants initially paid him a salary of approximately $1,000 per week, and they later increased his salary to approximately $1,115.38 per week.

26. Defendants employed Mitchell as a construction superintendent from December 7, 2015 until April 14, 2017. During Mitchell's employment as superintendent, Defendants paid him a salary of $1,115.38 per week, and they increased his salary to approximately $1,153.85 per week starting in or around February 2017.

27. Defendants employed Rogers as a construction superintendent from approximately August 15, 2014 until June 26, 2017, excluding an approximately six-month period of time in which he worked for Defendant Grayhawk in a different position. During Rogers's employment as superintendent, Defendants initially paid him a salary of approximately $1,000 per week, and they later increased his salary to $1,115.38 per week starting in or around June 2017.

28. Defendants employed Sovern as a construction superintendent from November 3, 2015 through July 7, 2017. During Sovern's employment as superintendent, Defendants initially paid him a salary of $1,115.38 per week, and they increased his salary to approximately $1,171.15 per week starting in or around March 2017.

29. As construction superintendents, Plaintiffs' primary objective was to successfully complete the construction of assigned residential homes by the deadlines set by Defendants.

30. At the onset of the construction of each home, Defendants provided Plaintiffs with all instruction, information, and documentation needed to build each home.

31. For example, Defendants provided purchase orders for all upcoming expenses, information regarding all subcontractors that Defendants had previously selected to perform the work at the home, design plans, and information regarding type and color of all materials to be used in the home.

32. Plaintiffs coordinated with the previously chosen subcontractors to properly sequence the work to ensure the homes were built quickly and efficiently.

33. Plaintiffs' job duties included traveling between assigned homes to track construction progress, scheduling the previously chosen subcontractors to ensure work was properly sequenced and timely progressing, verifying that the construction matched the specifications indicated in the materials provided by Defendants, and performing manual labor, such as punch and yard work, needed to complete each home.

34. Plaintiffs reported back to Defendants the progress of each home and signed off on purchase orders once the subcontractors completed certain items of work.

35. Plaintiffs did not have discretionary authority in their position as superintendent for Defendants.

36. Plaintiffs could not deviate from Defendants' requirements or instructions without permission.

37. In performing their job duties for Defendants, Plaintiffs, and all persons similarly situated to them, were, within the meaning of the FLSA: engaged in commerce; engaged in the production of goods for commerce; or handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person.

38. Plaintiffs Sizemore, Burditt, Hoefert, Mitchell, Rogers, and Sovern all consent to become party plaintiffs in this case. True and correct copies of Plaintiffs' written consent forms under 29 U.S.C. § 216(b) are being filed contemporaneously with this Complaint.

### Defendants' Violation of Plaintiffs' Rights under the FLSA

39. Throughout Plaintiffs' employment, Defendants misclassified them as exempt employees under the FLSA.

40. Plaintiffs were, in fact, non-exempt employees.

41. Throughout Plaintiffs' employment, Plaintiffs worked approximately 50 hours per week or more.

42. Defendants did not, however, keep proper records or track Plaintiffs' hours worked, and Defendants did not pay Plaintiffs overtime compensation as required by the FLSA.

## FLSA Collection Action Allegations

43. Defendants misclassified Plaintiffs and other construction superintendents and assistant superintendents in their employ for at least three years preceding the filing of this Complaint.

44. Upon information and belief, during the relevant time period, Defendants employed approximately 20 construction superintendents and assistant superintendents in Georgia and many more in other parts of the United States.

45. Upon information and belief, none of the other construction superintendents or assistant superintendents (collectively, the "Collective Action Group") were paid overtime compensation as required by the FLSA.

46. The Collective Action Group is similarly situated to Plaintiffs. Its members would benefit from the issuance of a judicial notice of this lawsuit and the opportunity to join and participate in it under 29 U.S.C. § 216(b).

47. Plaintiffs and the Collective Action Group are similarly situated because they all have substantially similar job requirements and pay provisions and were subjected by Defendants to a common practice, policy, or plan that required or permitted them to work more than 40 hours per week for Defendants' benefit without receiving the compensation guaranteed to them by the FLSA.

48. The identities of the members of the Collective Action Group are known to Defendants and can be located through Defendants' employment records.

49. Plaintiffs and the Collective Action Group should be permitted to pursue their claims collectively under 29 U.S.C. § 216(b).

50. A collective action represents the most efficient mechanism for adjudicating the FLSA claims of Plaintiffs and the Collective Action Group.

51. Plaintiffs request that they be permitted to serve as the representatives of all similarly situated employees and former employees of Defendants who consent to participate in this action and that, pursuant to 29 U.S.C. § 216(b), this lawsuit be granted collective-action status.

## Claim for Relief

52. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint into this Claim for Relief.

53. Defendants have engaged in a widespread pattern and practice of violating the FLSA by failing and refusing to pay overtime wages as required by law to Plaintiffs and other of its construction superintendents and assistant superintendents, all of whom are non-exempt employees under the FLSA. By failing and refusing to pay the overtime compensation required by law to those employees and former employees who earned it, including Plaintiffs, Defendants willfully violated the Act.

54. Plaintiffs and those similarly situated to them are appropriate persons to seek redress for such violations because they are "employees" under 29 U.S.C. § 216(b).

55. Plaintiffs and the members of the Collective Action Group were not and are not employed by Defendants in an executive, administrative, or professional capacity pursuant to 29 U.S.C. § 213(a)(1) and were not and are not subject to any other exemptions contained in the FLSA or in any regulations interpreting the FLSA.

56.     Defendants have damaged Plaintiffs and the members of the collective action group by unlawfully, knowingly, and willfully denying overtime wages to them in violation of the FLSA.

57.     As evidenced by their failure to pay Plaintiffs the overtime compensation to which the law clearly entitles them, Defendants have not made a good-faith effort to comply with the FLSA.

58.     Under the FLSA, Defendants are liable to Plaintiffs and to each member of the Collective Action Group in the total amount of their unpaid overtime wages, and an additional, equal amount as liquidated damages, as well as for reasonable attorneys' fees, court costs, expenses of this action, and applicable pre- and post-judgment interest.

59.     Defendants' failure and refusal to comply with the Act constitutes a willful violation of § 7(a), 29 U.S.C. 207(a), for purposes of determining the applicable statute of limitations under 29 U.S.C. § 255(a).

60.     Plaintiffs and those similarly situated to them are therefore entitled to all such unpaid overtime compensation and an additional, equal amount as liquidated damages for all uncompensated, overtime hours worked by them at any time during the three-year period immediately preceding the filing of this lawsuit.

61.     Under 29 U.S.C. § 211(c) and U.S. Department of Labor Regulations issued in furtherance of that statute, Defendants have a duty to maintain and preserve payroll and other employment records.

62. Because those records are or should be in Defendants' possession, custody, and control, Plaintiffs cannot state precisely at this time the exact amount due to them under their claims, but each is due substantial compensation from Defendants under the FLSA.

63. Because of Defendants' violations of the Act, Plaintiffs and the Collective Action Group have been denied and deprived of overtime compensation in an amount to be determined at trial. Plaintiff and all similarly-situated former employees are entitled to recover that amount, liquidated damages, prejudgment interest, attorneys' fees and costs, and all other compensation afforded them by 29 U.S.C. § 216(b).

Based on the above, Plaintiffs pray that the Court:

1. Issue an order certifying this action as a collective action under 29 U.S.C. § 216(b) and designate Plaintiffs as the representatives of all those similarly situated to them;

2. Authorize Plaintiffs to give notice of the collective action, or the Court give notice, itself, of the collective action to all persons who, at any time during the three years preceding the filing of this lawsuit, up through and including the date that the Court authorizes issuance of court-supervised notice, have been employed by Defendants as construction superintendents, assistant superintendents, or any position with materially similar job duties and responsibilities. Such notice should inform those current or former employees of Defendants who are similarly situated to Plaintiffs that this lawsuit has been filed, the nature of the suit, and of their right to join the lawsuit if they believe that they were denied overtime wages;

3. Award Plaintiffs and all those similarly situated to them actual damages for their unpaid overtime wages, plus an additional, equal amount as liquidated damages, plus

pre- and post-judgment interest at the statutory rate, plus attorneys' fees, costs, and disbursements as provided by 29 U.S.C. § 216(b); and

4. Award Plaintiffs and all those similarly situated to them any further legal and equitable relief that the Court deems necessary and just, including but not limited to all relief to which Plaintiffs are entitled to under the Act.

5. **Plaintiffs demand a trial by jury.**

Dated:  August 3rd, 2017.

**BUCHANAN & LAND, LLP**

|  |  |
|---|---|
| 1425 Wynnton Road | /s/ Jerry A. Buchanan |
| P.O. Box 2848 | Jerry A. Buchanan |
| Columbus, GA 31902 | Georgia Bar No. 092200 |
| (706) 323-2848 t | Benjamin Land |
| (706) 323-4242 f | Georgia Bar No. 432825 |
| jab@buchananland.com |  |
| benland@buchananland.com |  |

**JOHNSON MARLOWE LLP**

|  |  |
|---|---|
|  | /s/ Brad Valentine |
| 455 Epps Bridge Pkwy, Ste. 101 | Dustin Marlowe |
| Athens, GA 30606 | Georgia Bar No. 773538 |
| (706) 425-8740 t | Brad Valentine |
| (706) 850-6400 f | Georgia Bar No. 583142 |
| dustin@johnsonmarlowe.com |  |
| brad@johnsonmarlowe.com |  |