# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| MICHAEL CAMERON SIZEMORE, *et al.*, : <br> : <br> Plaintiffs, : <br> v. : <br> : <br> GRAYHAWK HOMES, INC., *et al.*, : <br> : <br> Defendants. : <br> : | Case No. 4:17-CV-161 (LAG) |

## ORDER

Before the Court is the Parties' Joint Motion for Stipulated Judgment Approving Settlement and Release Agreement (Doc. 68). Therein, the Parties seek the Court's approval of their proposed Fair Labor Standards Act settlement agreement and dismissal of this case with prejudice. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiffs Michael Cameron Sizemore, James Ellis Burditt, Jr., Marc Eugene Hoefert, James Samuel Mitchell,[1] Randy Carl Rogers, and Aaron Matthew Sovern initiated this Fair Labor Standards Act (FLSA) collective action on August 3, 2017, on behalf of themselves and similarly situated individuals. (Doc. 1.) Plaintiffs allege that they had worked for Defendants Grayhawk Homes, Inc. and David B. Erickson as construction superintendents. (*Id.* ¶ 1.) Plaintiffs further allege that they and similarly situated employees regularly worked overtime hours but that Defendants failed to pay overtime wages. (*Id.* ¶ 2.) Defendants answered the Complaint on September 7, 2017, and denied liability. (Doc. 9 at 1.) On April 27, 2018, the Court granted Plaintiffs' Motion for Conditional Certification and authorized Plaintiffs to provide notice of this lawsuit to Defendants' superintendents. (Doc. 37.) As the result of the notice, one additional individual—Randy Smith—filed a consent to participate. (Doc. 68 at 2.) Accordingly, the instant Motion represents an agreement between the six Named Plaintiffs, one Opt-In Plaintiff, and Defendants.

---

[1] Mr. Mitchell died unexpectedly on June 28, 2019. Candace Mitchell, his widow and the administrator of his estate, was substituted into this case in his place on January 6, 2020. (Doc. 67; Doc. 68 at 1 n.1.)

On December 12, 2019, the Parties filed the instant Motion and their Proposed Settlement Agreement and Release. (Docs. 68, 68-1.) Therein, the Parties represent that after substantial investigation and discovery, they reached an agreement in mediation to provide back wages, liquidated damages, penalties, and interest. (Doc. 68 at 2–3; Doc. 68-1 at 3.) In the Proposed Agreement, Defendant has agreed to pay a total settlement amount of $170,000.00. (Doc. 68-1 at 2.) Of this amount, $102,284.51 is to be paid to the individual members of the collective action, with $16,365.52 going to each Named Plaintiff and $4,091.39 going to Opt-In Plaintiff Smith. (*Id.* at 3, 13.) Finally, Plaintiffs' counsel is to be paid $54,035.13 in attorney's fees and $13,680.36 in costs. (*Id.* at 3.)

## DISCUSSION

The Eleventh Circuit has explained that claims for unpaid overtime compensation under the FLSA may only be settled or compromised (1) when the Department of Labor supervises the payment of back wages or (2) when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–55 (11th Cir. 1982). Here, the Parties seek to have the Court enter a stipulated judgment. Before approving an FLSA settlement, the Court must review the proposed agreement to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1355; *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013) (holding that the *Lynn's Food Stores* requirement of judicial approval of proposed FLSA settlement agreements also applies to settlements between former employees and employers). If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

### I.  Bona Fide Dispute over FLSA Provisions

The Court must first determine whether there is a bona fide dispute. Plaintiffs bring their claims under 29 U.S.C. § 216(b) for violations of unpaid overtime requirements of 29 U.S.C. § 207. Section 207(a) requires employers to compensate employees for hours worked in excess of forty hours per week at a rate of 1.5 times the employee's regular wage. The Parties dispute whether Plaintiffs were properly classified and compensated under the FLSA, whether Plaintiffs are exempt from the FLSA overtime provisions, how many overtime hours Plaintiffs

2

worked, and whether Plaintiffs would be entitled to liquidated damages. (Doc. 68 ¶ 12.) Accordingly, there is a bona fide dispute, and the Court must determine whether the Proposed Agreement is a "fair and reasonable" compromise. *Lynn's Food Stores*, 679 F.2d at 1355.

## II. Fair and Reasonable Settlement

In reviewing a proposed FLSA settlement agreement of a private claim, the Court "must 'scrutinize[] the settlement for fairness,' and determine that the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Webb v. CVS Caremark Corp.*, 2011 WL 6743284, at *3 (M.D. Ga. Dec. 23, 2011) (quoting *Lynn's Food Stores*, 679 F.2d at 1353, 1355). The Eleventh Circuit has held that district courts have the discretion to reject a proposed FLSA settlement as "unreasonable based on non-monetary terms such as confidentiality provisions and general releases." *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013); *see also, e.g.*, *Anthony v. Concrete Supply Co., Inc.*, 2017 WL 5639933, at *2 (N.D. Ga. Aug. 23, 2017) (denying approval of settlement agreement because of confidentiality provision); *Guerra v. Flores*, 139 F. Supp. 3d 1288, 1292 (N.D. Ala. 2015) (holding proposed FLSA settlement agreement filed under seal for *in camera* review was unreasonable); *Webb*, 2011 WL 6743284, at *3 (denying approval of FLSA settlement because confidentiality and pervasive release provisions were unreasonable). Thus, the Court must conduct an independent analysis of the proposed settlement agreement, including its non-monetary provisions.

### A. Settlement Amount

The financial terms of the Proposed Agreement represent a fair and reasonable compromise of the class's claims. Pursuant to the Proposed Agreement, the total compensation to Plaintiffs is $102,284.51, with Named Plaintiffs each receiving $16,365.52 and Opt-In Plaintiff Smith receiving $4,091.39. (Doc. 68-1 at 13.) In other words, Named Plaintiffs are each allocated 16% of the amount, and Opt-In Plaintiff Smith is allocated 4%. The Parties explain that, because Defendants did not keep track of Plaintiffs' hours of work, and Plaintiffs did not maintain independent records of their hours, this division of the settlement is more reasonable than allocation on a weeks-worked or similar formula. (Doc. 68 at 6 n.4, 10 n.7.) Furthermore, Plaintiffs submit in their declarations that their preference is to divide the settlement in this way. (*Id.* at 10 n.7; Doc. 68-3 ¶ 6; Doc. 68-4 ¶ 6; Doc. 68-5 ¶ 6;

3

Doc. 68-6 ¶ 6; Doc. 68-7 ¶ 6; Doc. 68-8 ¶ 6; Doc. 68-10 ¶ 4.) Plaintiffs reason that this division is justified given the length of time each Plaintiff worked for Defendant, the fact that the Named Plaintiffs initiated this suit, and the relative time and attention the Named Plaintiffs and Opt-In Plaintiff Smith devoted to this suit. (Doc. 68-3 ¶ 6; Doc. 68-4 ¶ 6; Doc. 68-5 ¶ 6; Doc. 68-6 ¶ 6; Doc. 68-7 ¶ 6; Doc. 68-8 ¶ 6; Doc. 68-10 ¶ 4.)

In light of the existence of a bona fide dispute, the fact each Plaintiff—including the one Opt-In Plaintiff—are satisfied with the Proposed Agreement, and the impracticability of allocating the settlement based on hours worked, the Court finds that the total settlement amount and its proposed allocation represents a fair and reasonable compromise of Plaintiffs' claims.

### B. Release of Claims Provision

While the financial provisions of the Proposed Agreement are fair and reasonable, the release provision is not. Courts generally will not approve broad, so-called "pervasive releases" of claims in exchange for settlement of a plaintiff's FLSA claims alone. *Nichols v. Dollar Tree Stores, Inc.*, 2013 WL 5933991 at *3 (M.D. Ga. Nov. 1, 2013) (holding that such "pervasive releases" are "inherently unfair"). "[A]n employer is not entitled to use a FLSA claim . . . to leverage a release from liability unconnected to the FLSA." *Webb v. CVS Caremark Corp.*, 2011 WL 6743284, at *3 (M.D. Ga. Dec. 23, 2011) (quoting *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010)). Such blanket releases are disfavored because plaintiffs must essentially release innumerable claims of unknown value to settle a single FLSA claim, thereby "confer[ring] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1352. Courts also disfavor pervasive release provisions that apply not only to the defendant employer but also its subsidiaries or affiliates where there is no "information as to how many affiliates or subsidiaries exist" because there is no way to accurately "determine the scope of [the] release . . . ." *Lee v. Guyoungtech USA, Inc.*, 247 F. Supp. 3d 1257, 1267 (S.D. Ala. 2017).

The Proposed Agreement's release provision requires Named Plaintiffs to waive all claims against Defendants and "any current or former subsidiary, parent company, affiliated entity, related entity, successor, assign or division of Defendants . . . from any and all claims without limitation during the time period of August 3, 2014 through the end date of each

4

Named Plaintiff's employment." (Doc. 68-1 at 4.) With respect to Opt-In Plaintiff Smith, Defendants are released

> of any claims that were or could have been brought by him in the Litigation based on the factual allegations in the Complaint, whether known or unknown, during the period of August 3, 2014 through the end date of his employment, limited to overtime wage and hour claims under federal, state, or local law, including such claims under the Fair Labor Standards Act or any state wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, or pursuant to express or implied wage contract claims for overtime hours worked.

(*Id.*)

While Smith's release—limited to FLSA and related claims against Defendants—is reasonable, the Named Plaintiffs' release provision is the type of pervasive release disfavored by courts. Thus, the Court cannot approve the Proposed Agreement with the mutual release language as currently set forth regarding the Named Plaintiffs. The Parties, apparently recognizing the impropriety of this provision, and that the Court likely would not approve the settlement with the general release, "agree[d] to limit the scope of the Named Plaintiffs' release to the scope of the Opt-In's release." (Doc. 68-1 at 4.) Accordingly, as the Parties have agreed, in the alternative, to substitute the limited release language set forth in the release provision applicable to the Opt-In Plaintiff for the general release provision proposed for the Named Plaintiffs, the Court finds that the alternative release provision is reasonable.

### III.    Attorney's Fees

Finally, the Court considers the reasonableness of the Proposed Agreement's attorney's fees. The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam). The Court can, however, approve a proposed settlement without separately considering the reasonableness of attorney's fees when the settlement (1) "constitutes a compromise of the plaintiff's claims," (2) "makes full and adequate disclosure of the terms of settlement, " and (3) "represents that the plaintiff's

5

attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff . . . ." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Here, as discussed above, with the exception of the release provision, the settlement represents a fair compromise of the class's claims, and the Parties fully disclose the terms of the settlement and the negotiation process in reaching that settlement. (Doc. 68 at 6–11, 17–19.) Furthermore, the Parties separately negotiated the settlement of Plaintiffs' claims and attorney's fees. (*Id.* at 18–19.) Finally, the attorney's fees are less than Plaintiffs' counsel was entitled to under its retention agreement. (*Id.* at 16.) Plaintiffs' counsel accepted the case on a contingency fee with the agreement that counsel would be entitled to 35% of any settlement amount. (*Id.*) The fee award, however, represents only 32% of the total settlement amount. (*Id.*) Moreover, Plaintiffs' counsel expended more than $185,000 in billable hours litigating the case. (*Id.* at 20.) Accordingly, the award of attorney's fees is appropriate.

## CONCLUSION

For the reasons stated above, the Parties' Joint Motion for Stipulated Judgment Approving Settlement and Release Agreement (Doc. 68) is **GRANTED**. The scope of the Named Plaintiffs' release is limited to the scope of the Opt-In Plaintiff Smith's release. By **Tuesday, May 12, 2020**, the Parties shall file an updated agreement with amended language in accordance with this Order. Failure to do so will result in denial of this Motion.

**SO ORDERED**, this 28th day of April, 2020.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**